Richmond D. Moot and Edith McC. Moot v. Commissioner.
Moot v. Commissioner
Docket No. 105520.
United States Tax Court
1942 Tax Ct. Memo LEXIS 100; 1 T.C.M. (CCH) 46; T.C.M. (RIA) 42583; November 4, 1942
*100 David L. Landy, Esq., 302 Erie County Bank Bldg., Buffalo, N. Y., for the petitioners. Loren P. Oakes, Esq., and C. C. Holmes, Esq., for the respondent. STERNHAGEN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $4,723.23 in income tax for 1937. He disallowed a deduction on account of the worthlessness of shares and deduction on account of bad debts. Findings of Fact Petitioners, husband and wife, are residents of Schenectady, New York, and filed a joint income tax return for 1937 with the Collector for the Fourteenth District of New York. The husband (alone called petitioner hereafter) is a lawyer and has, for many years, had a brokerage account through which he purchases and sells securities. In December 1933, petitioner and his wife decided that a security holding corporation would be beneficial to them because of advantages in taxes, market operations and convenience of testamentary distribution of property among their children. The Ardsley Securities Corporation was thereupon organized with an authorized capital stock of $10,000, represented by 100 shares. Its purpose was to buy, hold and sell property and to trade on margin. Petitioner *101 paid $10,000 for its shares, of which 90 were issued to him and 10 to his wife. He became president; she vice-president, and his secretary became the corporation's secretary and treasurer. These three were also directors. On January 29, 1934, petitioner loaned the corporation $10,000 at 5 per cent interest. In December 1933, a brokerage account was opened in the corporation's name and numerous purchases and sales of securities were made, including short and margin transactions. This was the corporation's only activity. It had a substantial number of transactions up to the middle of 1935 when its credit balance became $378.50. Then the account lay practically dormant until 1937. In 1937, a few short transactions yielded a small profit. For a while, it paid petitioner a salary of $500 a month. On May 2, 1934, it paid his $166.67 interest and $1,000 of the principal of his loan. It made no more payments on account of salary or the loan. On its income tax returns for the years 1933-1937, inclusive, the corporation reported capital losses and negligible deductions apart from petitioner's salary and the payment of interest on the note in 1934. At the end of 1936, the corporation's assets *102 had a value of $346. During 1937, there were some transactions in the account. The corporation was indebted only to petitioner. On December 22, 1937, petitioner stated at a director's meeting that the tax imposed on personal holding companies by the 1937 Revenue Act would make it "impossible for the corporation to ever liquidate its indebtedness." The directors then resolved that the corporation be dissolved and that all cash: "be used first for the payment of accrued taxes and expenses of dissolution, and the balance, if any, be paid on account of interest accrued on the corporation's indebtedness." The corporation was dissolved on December 28, 1937. The brokerage account was closed. The corporation's remaining funds of $1,103.19 were paid to petitioner on December 30, 1937 and recorded as "interest on indebtedness". Since the corporation's dissolution, petitioner has bought and sold securities on his own account as he did before. Opinion STERNHAGEN, J.: The petitioner seeks a deduction in 1937 for the loss of the $10,000 cost of the corporation's shares and the $9,000 remainder of his $10,000 advance. The Commissioner disallowed both deductions, holding that both the shares *103 and the debt became worthless prior to 1937. We think that the determination as to both items must be sustained. The evidence is clear that long before the beginning of 1937 the corporation had used up its capital and the remainder of the amount it had borrowed from petitioner, and there was nothing but a bare speculative chance of its ever recovering. Petitioner was the one person who knew all of the facts and there is no doubt that he had prior to 1937 ascertained both the shares and the debt to be worthless. Since this is the ground for the Commissioner's determination, we need go no further in sustaining it; but we think that the record would make it impossible to give full recognition to the corporation as other than a factitious tax saving device, the transactions with which the government is not required to recognize. . When its tax-saving purpose was frustrated by new legislation, the corporation was immediately put to death, cf. , but the substantial hopelessness of petitioner's recovery of his investment had already become manifest. Decision *104 will be entered for the respondent.